The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillip A. Holmes. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the evidence, the Full Commission reverses in part and modifies in part the prior Opinion and Award.
****************
Pursuant to the Pre-Trial Agreement which was entered into prior to the hearing and the Form 21 Agreement for Compensation for Disability approved on November 17, 1993, the Full Commission finds as fact and concludes as matters of law the following
STIPULATIONS
1. The parties are bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
2. National Surety Corporation was the workers' compensation insurance carrier for employer-defendant at all times relevant to this claim.
3. On July 8, 1993, an employer-employee relationship existed between plaintiff-employee and defendant-employer.
4. Payment for temporary total disability compensation, pursuant to N.C. Gen. Stats. § 97-29, was made by National Surety Corporation to plaintiff from July 15, 1993 through November 21, 1993 and from January 6, 1994 through June 8, 1994, said compensation totaling $12,751.43. Further detail of payments is set forth in a document stipulated on December 23, 1996 after the Full Commission argument.
5. The medical records of the following providers are genuine and admissible without further authentication.
(a) Dr. Keith Brown
(b) Dr. Sami Oweida
(c) Medical Center Associates
(d) Rehability Center
(e) Carolina Hand Center
****************
The Full Commission rejects the findings of fact found by the Deputy Commissioner and enters the following
FINDINGS OF FACT
1. Plaintiff, at the time of the hearing before the Deputy Commissioner, was 39 years old and has been employed in the construction industry for most of his adult life.
2. Plaintiff sustained an admittedly compensable injury on July 8, 1993 which is the subject of this claim when he was removing windows and a piece of plate glass shattered causing injuries to his left arm and left elbow.
3. Plaintiff was seen in the emergency room at Carolinas Medical Center in Charlotte, where he was treated and released. Plaintiff subsequently came under the care of Dr. Warren B. Burrows, II, of Carolina Hand Center in Charlotte, who treated him for a partial laceration of the biceps tendon at the elbow, as well as a laceration of the antebrachial cutaneous nerve of the left forearm. Dr. Burrows recommended physical therapy but did not recommend surgery.
4. Plaintiff continued under the care of Dr. Burrows until he stated that he had found another job in Alabama and decided not to have additional surgery.
5. Plaintiff next saw Dr. Sami J. Oweida, an orthopedic surgeon of Charlotte, for further treatment. Dr. Oweida recommended continued physical therapy and indicated that reconstruction of the distal biceps tendon might be indicated. Since plaintiff decided not to proceed with reconstructive surgery at the time, Dr. Oweida rated plaintiff as retaining a forty percent permanent partial disability of the left arm as a result of his injury. Dr. Oweida released plaintiff from his care on that date and advised him to return if he wanted to reconsider surgery.
6. Thereafter, plaintiff did reconsider surgery, which was performed by Dr. Oweida on January 6, 1994. By June 7, 1994, plaintiff was pleased with his outcome and had regained substantial use of his arm. In fact, plaintiff stated that his arm was one hundred percent better than before the surgery, although he did have some decreased sensation and diminished strength in said arm.
7. Dr. Oweida released plaintiff from his care on June 7, 1994, with a ten percent permanent partial impairment of the left arm based on weakness and decreased sensation. Dr. Oweida stated that there was no reason plaintiff could not resume normal work activities as of June 8, 1994, though he also indicated plaintiff could not return to his former job as a sheet rock hanger due to his injury.
8. On August 12, 1994, plaintiff, who had moved to Tennessee, was seen on one occasion by Dr. L. Keith Brown of Winchester, Tennessee for a second opinion. Dr. Brown stated that plaintiff had done amazingly well following his biceps tendon laceration and repair. Dr. Brown stated that plaintiff would benefit from aggressive continued rehabilitation, including electrical stimulation treatments and scar massage.
9. Subsequently, Dr. Brown stated that plaintiff retained a fifteen percent permanent partial impairment of the left upper extremity as a result of weakness, pain and sensory changes related to the injury of the biceps tendon. Dr. Brown stated that he did not believe plaintiff could return to work as a dry wall hanger or as a tower crane operator.
10. On July 26, 1993, the parties entered into a Form 21 Agreement for Compensation for Disability, which was approved by the North Carolina Industrial Commission on November 17, 1993. The Agreement provided that plaintiff's actual average weekly wage at the time of his injury based on plaintiff's 1992 tax return was $541.48 which yields a weekly compensation rate of $360.98. Though this Agreement was not made subject to wage verification, at the time plaintiff signed this Form 21 he relied to his detriment on the representation made to him by the current adjuster, Michelle Brewster, that after plaintiff's accountant submitted a statement to her, she would adjust his average weekly wage. This consideration was made in view of the fact that prior to February 1, 1993 plaintiff had been an hourly employee for Beacon Construction Company, but after this date he performed work as a sole proprietorship, Westco Contractors, where his average weekly wages of $1,179.86 were such that he would be entitled to the maximum weekly compensation rate at the time of $442.00. The Form 21 though signed and returned by plaintiff was not submitted by the carrier to the Industrial Commission in August, September or October. Thereafter, upon inquiry by plaintiff's counsel, a new adjuster, Gail Goldson, submitted to the Industrial Commission in November the signed Form 21 as well as Form 22, containing the statement of wages by plaintiff's accountant. Attached to the Form 22 was a handwritten note by the adjuster asking the Commission to compute plaintiff's average weekly wage, to the Industrial Commission. However, apparently the forms were not associated and the Form 21 was approved without regard to the Form 22. Thus, rather than receiving a weekly compensation check of $442.00, plaintiff has received payments at the rate of only $360.98.
11. Plaintiff reached the point of maximum medical improvement and/or the end of the healing period on June 7, 1994, when he was released by his treating physician, Dr. Oweida. However, plaintiff was not able to return to his work as a sheet rock hanger due to his injury. As a consequence, he looked for other work in a broad geographic area, including Alabama, Charlotte and Tennessee. He eventually moved to and found work on his own earning $500.00 per week as of March 27, 1995 in Tennessee where his wife was transferred. Defendants did not locate any offers for plaintiff even though the treating doctor indicated that plaintiff could not return to hanging sheetrock. However, to complicate matters this statement was in conflict with another statement made by the same doctor in which the doctor released plaintiff for regular work without restrictions. Nonetheless, it is the Defendants' responsibility to clarify doctor's releases when conflicts such as this arise.
12. As a result of plaintiff's admittedly compensable injury of July 8, 1993, he retains a 10 percent permanent partial disability of his left arm.
13. Further treatment recommended by Dr. Keith Brown is not reasonably required to effect a cure or give relief, nor will it tend to lessen the period of disability, as a result of plaintiff's above-described injury.
****************
Based upon the findings of fact, the Full Commission concludes as follows
CONCLUSIONS OF LAW
1. In view of the misrepresentation made by the defendant-carrier's adjuster to plaintiff upon which he relied when he signed the Form 21 with regard to his average weekly wage and the defendant-carrier's failure to adjust his average weekly wage once in receipt of his accountant's statements of wages earned when he became a sole proprietor which resulted in a financial loss to plaintiff, Form 21 previously approved by the Industrial Commission on November 17, 1993 is ordered set aside with regard to the average weekly wage. N.C. Gen. Stats. § 97-17.
2. Since the average weekly wage as set forth on Form 21 is ordered set aside, a new wage must be determined. The average weekly wage which "will most nearly approximate the amount which the injured employee would be earning were it not for the injury," and which is the fairest to both parties, is $1,279.11, based on plaintiff's wages from February through July, 1993. Since a compensation rate based on this amount exceeds the maximum allowed by law for injuries received in 1993, plaintiff's weekly compensation will be the maximum of $442.00. N.C. Gen. Stats. § 97-2(5).
3. As a result of his admittedly compensable injury, plaintiff was temporarily totally disabled from July 18, 1993 to March 27, 1995 with the exception of the time he earned wages while under a trial return to work. Consequently, he is entitled to benefits during this period of temporary total disability at the weekly compensation rate of $442.00, subject to a credit for any benefits previously paid by defendants. N.C. Gen. Stats. § 97-29.
4. As of March 27, 1995 when plaintiff returned to work for another employer earning an average weekly wage of $500.00, plaintiff is entitled to weekly temporary partial disability compensation in the amount of $442.00 ($1,279.11 — $500.00 = $779.11 x .6667 = $519.43 which exceeds the maximum compensation rate allowed in 1993) for a period of time not to exceed 300 weeks from his date of injury of July 8, 1993, or until further order of the Industrial Commission allowing defendants to cease payment of temporary partial disability compensation. N.C. Gen. Stats. § 97-30.
5. Since the temporary partial benefits to which he is entitled exceed the amount which he would receive as permanent partial disability compensation ($10,608.00) by reason of the 10% rating to his left arm, it is presumed that plaintiff would claim benefits under the statute which provides him the greater benefit. Gupton v. Builders Transportation., 320 N.C. 38,357 S.E.2d 674 (1987); N.C. Gen. Stats. § 97-30; and N.C. Gen. Stats. § 97-31(13).
6. Plaintiff is entitled to payment of all medical expenses incurred as a result of his compensable injury, with the exception of further treatment as recommended by Dr. Keith Brown, which may be reasonably required to effect a cure, give relief, and will tend to lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
****************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses in part and modifies in part the holding of the Deputy Commissioner and enters the following
AWARD
1. Subject to any attorney fee hereinafter approved, defendants shall pay compensation to plaintiff, at the weekly rate of $442.00 for temporary total disability from July 8, 1993 until March 27, 1995, except for the time period during which plaintiff earned wages while under a trial return to work. Further, defendants are entitled to a credit for any benefits previously paid.
2. Subject to an attorney fee hereinafter approved, defendants shall pay compensation to plaintiff at the weekly rate of $442.00 for temporary partial disability as of March 27, 1995 for a period not to exceed 300 weeks from his date of injury of July 8, 1993, or until further order of the Industrial Commission allowing defendants to cease payment of temporary partial disability compensation. Such amount as has accrued shall be paid in a lump sum, subject to a counsel fee herein allowed.
3. Plaintiff's counsel is hereby allowed a reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff. This amount shall be deducted from the lump sum due plaintiff and paid directly to plaintiff's attorney and thereafter every fourth check due plaintiff shall be paid directly to plaintiff's attorney.
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of his injury of July 8, 1993 for treatment, other than that recommended by Dr. Keith Brown, which may be reasonably required to effect a cure, give relief and will tend to lessen plaintiff's disability.
5. Defendants shall pay the costs of this action.
This is the ______ day of January, 1997.
 S/ ___________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ___________________________ LAURA K. MAVRETIC COMMISSIONER
S/ ___________________________ COY M. VANCE COMMISSIONER
DCS:jmf